UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JOSEPH A. CASCIONE, On Behalf of Himself
and All Other Stockholders of CASCIONE,
CHECHANOVER and PURCIGLIOTTI, P.C.,

                        Plaintiffs,

      - against -

ROBERT PURCIGLIOTTI, THOMAS G.
CASCIONE, MICHAEL J. GALLUZZI,
CASCIONE, PURCIGLIOTTI and GALLUZZI,
P.C., and CASCIONE, CHECHANOVER, and
PURCIGLIOTTI, P.C.,

                        Defendants.
---------------------------------------------------------------x

05 Cv. 7185 (CLB)

***Memorandum and Order***

Brieant, J.

      Before the Court for decision in this diversity case are the following motions: 1) Defendants' Motion to Confirm an Arbitration Award (Docs. 51 and 60); Plaintiff's Motion to Vacate the Arbitration Award and for Partial Summary Judgment (Doc. 55); and Defendants' Cross Motion for Summary Judgment (Doc. 63).

      The facts presented below are undisputed or assumed to be true for the purposes of this motion only. For the reasons stated below, this Court confirms the award of the arbitrator.

      As of early 1995, plaintiff Joseph Cascione was the controlling member of Cascione, Chechanover & Purcigliotti, P.C. ("CCP"), a successful law firm and New York Professional Corporation. At a time when legal ethics prevented sale of a law practice, Plaintiff was seeking a favorable arrangement by which he could retire and receive deferred compensation payments

1

from CCP.[1]  On January 9, 1995, Plaintiff entered into a series of Employment and Subscription agreements with his nephew, defendant Thomas Cascione, and defendant Michael Galluzzi.  The Subscription agreements called for the individual Defendants to take over the operations of CCP.  These agreements stated that Plaintiff held the rights to [all] 100 shares of CCP, being the owner of 75 shares, and having the right to purchase 25 from a [former] partner.  The agreements called for deferred compensation to be paid to Plaintiff, at that point "believed to amount to $780,000", and states that the agreement "shall continue until such time as Joseph A. Cascione Esq. shall be fully paid his deferred compensation by the corporation and has tendered all of his shares back to the corporation, with any right title or interest in same."

On April 30, 1995, Plaintiff entered into a Deferred Compensation Agreement with CCP.  The earlier subscription agreements had expressly incorporated by reference any such agreement to be made between Plaintiff and CCP.  The Deferred Compensation Agreement provided that Plaintiff would be paid deferred compensation over the course of the next ten years "in recognition and consideration of the Former Employee's years of past service to the Corporation."  The amount to be paid was $780,000.00, with payments to be made on a monthly basis, in the amount of $6,500, for ten years.

---

[1]As early as  December 1993, Plaintiff had entered into several buyout agreements with his law partners including deferred compensation of $832,000, payable in monthly installments and transfer of title of a company car to Plaintiff.  Upon the request of both sides, the Supreme Court of New York County (J. Huff) ordered rescission of the buyout agreements.

Soon after the individual Defendants took over control of CCP, they claim they realized that the firm was suffering from financial difficulties, because of pending claims, and the fact that former partners had taken their cases with them. In April 1996, the individual Defendants decided to "wind down" CCP and formed a new law firm, called Cascione, Purcigliotti & Galluzzi, P.C. ("CPG"). The individual Defendants soon thereafter stopped practicing law through CCP. However, it is undisputed that Defendants continued to pay $6,500 to Plaintiff every month until April of 2005, at which time Plaintiff had received the sum of $780,000.00, as was called for by the Subscription and Deferred Compensation agreements. Plaintiff rejects the contention of Defendants that they wound down the affairs of CCP for valid business reasons, and charges them with "looting" the law firm. In light of the Arbitrator's award and full payment
by Defendants of his Deferred Compensation, Plaintiff lacks the standing to complain of this looting.

When the deferred compensation period came to an end in April 2005, a dispute arose between the parties as to whether Plaintiff was required to tender back the 100 shares of CCP based on the deferred compensation payments already made, or whether Defendants were required to pay some additional consideration to be determined, in order to purchase the 100 shares at fair market value. On May 2, 2005, defendant Thomas Cascione wrote to Plaintiff that the terms of the DC Agreement had been satisfactorily completed, and stated:

> Your interest in the stock Cascione, Chechanover & Purcigliotti PC (Originally Sacco, Rowen, Downes & Cascione, P.C.) is now terminated. The records of the corporation show that the stock was issued to 'Thomas Cascione in trust for Joseph Cascione' and therefore I will transfer the stock back to the corporation on your behalf. If you retain the

> original certificate please return it to us for the corporate records. This transfer is without further consideration and is not a taxable event as the corporation has no assets and has not operated as a law practice for several years. We expect to dissolve the corporation later this year. Consistent with the completion of the agreement, we will no longer provide you gratis legal counsel and are taking your name off of all letterhead. We are all pleased to have been able to honor the agreement and see this through to completion.

Plaintiff refused to hand over the shares, if indeed he has them, and Defendants refused to pay any further consideration for the shares. This action ensued. Plaintiff filed his First Complaint in this Court on August 12, 2005 which this Court dismissed on October 31, 2005, with leave to amend. Plaintiff filed the Amended Complaint on December 21, 2005. (Doc. 17).

The Amended Complaint asserts a derivative shareholder action against Defendants. Essentially, the Amended Complaint alleges that Defendants conspired to form the new firm CPG, without the knowledge of Plaintiff, and fraudulently diverted all of CCP's assets to that new corporation, "and otherwise waste[d] the assets of CCP", to the detriment of the shareholders of CCP. Among the assets Plaintiff alleges were fraudulently diverted from CPP to CPG are: cash deposits in the approximate amount of $200,000; open pending cases, valued at $2,000,000; legal fees due to CCP generated by these cases; and active client lists valued at $1,000,000. Plaintiff also alleges that Defendants fraudulently diverted accounts receivable, office equipment and furniture, a leasehold interest, and goodwill.

Defendants moved to dismiss the Amended Complaint, or in the alternative to compel arbitration pursuant to the arbitration clauses in the subscription agreements. Plaintiff cross moved for summary judgment. On April 24, 2006, this Court granted Defendants' motion to

compel arbitration, holding that "the Subscription and Deferred Compensation Agreements are so central and inextricably linked to the allegations in the Complaint that arbitration may properly be compelled in this case, and jurisdiction retained over the action pending such arbitration." The Court also denied the motions for summary judgment with leave to renew following arbitration.

*Arbitration*

The arbitration proceeding was conducted on January 25 and 26, 2007. Counsel agreed to a standard form decision under AAA Rules, which need not be "reasoned," but this one is. See Exhibit 13, dated December 4, 2006. The issue before the arbitrator was whether Plaintiff, "having been paid his deferred compensation, is required without further consideration to tender to CCP the CCP shares he owns and controls", or instead, as Plaintiff argued, "Thomas Cascione and Galluzzi are only now entitled *to purchase* the shares from him at fair market value or other unspecified reasonable value." [Award, p.3, emphasis in original]. The arbitrator noted at the outset that the shares had essentially no value, "except for the potential value of the putative claim of Joseph Cascione that [Defendants] diverted the assets of CCP" (Award, p.3).

The arbitrator went on to conclude that:

Pursuant to the Subscription Agreements, Joseph Cascione, now that he has been fully paid his deferred compensation under the Deferred Compensation Agreement, is required to turn over the CCP shares he owns and controls to CCP without further consideration. Based on the weight of the evidence, this is what the Subscription Agreements require and represents the intent of the parties. Award at page 5.

The Arbitrator regarded the agreements as ambiguous and considered them jointly

5

drafted. This Court agrees. He found that the future legal services to the law firm, of Thomas Cascione and Michael Galluzzi, contemplated by the Subscription Agreements and necessary to generate the money for the Deferred Compensation, constituted consideration for the shares. The Arbitrator held "From the agreements as a whole and this Tribunal's weighing of the testimony of the Parties it is evident that, if the Parties had intended further consideration for the shares they would have so provided. (Award at p.6) This conclusion seems unexceptional. It is supported by the Arbitrator's detailed analysis of the factual background of the transactions and the objective intent of the parties at the time, set forth in the Award beginning at page 7.

*Plaintiff's motion to Vacate Arbitration Award*

Under the Federal Arbitration Act ("FAA"), the review of arbitration awards by federal district courts is "very narrowly limited". *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985). The FAA allows for vacatur of an arbitration award by the district court only under a very narrow set of circumstances. Among those circumstances is "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

In addition, a judicially created ground for vacatur of an arbitration award, "manifest disregard of the law" was established by the Supreme Court in *Wilko v. Swan.* 346 U.S. 427, 436-37 (1953). Our Court of Appeals has described the limits of this doctrine as follows:

> It is not to be found in the federal arbitration law. 9 U.S.C. § 10. Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention

to it.  To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933-934 (2d Cir. 1986)

For the reasons stated below, this Court concludes that the arbitrator neither exceeded his powers nor did he engage in manifest disregard of the law.  There are no grounds for this Court to vacate the arbitration award, and it is hereby confirmed.

*UCC §8-319 and the Statute of Frauds*

Plaintiff argues that the arbitrator disregarded New York's Uniform Commercial Code §8-319 in finding that Plaintiff effectively sold his shares of CCP without a signed writing that stated the quantity to be sold at a defined price. UCC §8-319(a) provides in relevant part that: "A contract for the sale of securities is not enforceable by way of action or defense unless... there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price." Plaintiff argues that "[h]ere, there is no writing signed by plaintiff Cascione indicating that a stated quantity of CCP shares are to be sold at a defined price as required by" that section of the UCC.

Although Defendants disagree with the Arbitrator's decision, he clearly found that these requirements were met by the Subscription Agreements, and this Court agrees.  Those

7

agreements clearly state that one hundred shares shall be turned back to the corporation, and that "the consideration for these shares shall be the services of Thomas Cascione Esq. and his entry into this agreement." [Subscr Agreement para's 5 and 6.] These terms clearly state the quantity and price of the shares.

For the same reason, Plaintiff's argument that the Arbitrator manifestly ignored New York's Statute of Frauds fails. Plaintiff claims that the Arbitrator based his award on an oral agreement between the parties, that required Plaintiff to turn over the shares without compensation. However, the Arbitrator clearly found that this agreement was embodied in language of the Subscription Agreements, which stated in writing that the shares were to be given "to CCP without *further* consideration." (Award at p.5)(emphasis added). The Arbitrator clearly did not manifestly disregard either the *UCC §8-319 or the Statute of Frauds*, as embodied in New York General Obligations Law *§* 5-701(a)(1). That Joseph Cascione purported to sign only as President does not detract from his assent and participation or his compliance with the statute of frauds.

We might add that the deferred compensation agreement and the supporting documents, although perhaps not fairly reflective of perfect legal draftsmanship, define a consensual relationship between law partners, professionals agreeing to work together in the practice of law, and thereby, under New York law, fiduciaries, each of the other. *Gibbs v. Breed, Abbott & Morgan*, 271 A.D. 2d 180, 184-5 (1st Dept. 2000) ("Partners are constrained by such [fiduciary] duties throughout the life of the partnership and the manner in which partners plan for and

implement withdrawals is still subject to the constraints imposed upon them by virtue of their status as fiduciaries.") Especially when one side of an agreement between fiduciaries has fully performed, a court of equity will not be deterred by the statute of frauds or equivalent statutes in compelling performance by the other side, in accordance with objective intent.  Neither must an arbitrator.

*Attorney's fees*

This Court finds no basis which takes the payment of Defendants' legal fees for this litigation out of the American Rule, and the Arbitrator has suggested none.  Similarly, the arbitrator's award contains no provision for a legal fee award to Plaintiff.  The Court does not regard Plaintiff as a prevailing party.  Indeed the merits of the case are strongly with the defense.  The Court declines to award legal fees to Plaintiff under the fee shifting provisions of the Deferred Compensation Agreement, which was fully performed by Defendants before this lawsuit began.

Defendants motion for Rule 11 sanctions (no docket number) is denied for want of merit.  Rule 11 sanctions are not imposed for the vigorous advocacy of (barely) plausible legal theory, as was done by Plaintiff and his counsel in this case.  *K.M.B. Warehouse Distributors v. Walker Mfg. Co.,* 61 F.3d 123 (2d Cir. 1995).  The Arbitrator's Award is confirmed.  Motions (Docs. 51 and 60 ) are granted, Doc. 55 denied and Doc. 63 granted.

Defendants are entitled to a final Judgment to that effect, together with mandatory

injunctive provisions for delivery of the stock certificates to Defendant's attorneys, or alternatively their cancellation of record and reissuance, and that Plaintiff is entitled to no relief under the Amended Complaint.

Settle judgment on five (5) days notice, or waiver of notice.

X

            X

                    X

                        X

SO ORDERED.

Dated: White Plains, New York
      June 26, 2007

                                          *Charles Brieant*
                                   Charles L. Brieant, U.S.D.J.